IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Edward Grant, | C/A No. 1:17-3090-DCC |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Fiat Chrysler Corporation, FCA US LLC, | |
| Defendant. | |

Plaintiff, proceeding *pro se*, filed this diversity action *in forma pauperis* under 28 U.S.C. § 1915. ECF No. 1. Thereafter, Defendant filed a Motion to Dismiss pursuant to Rule 12(b)(6) and, alternatively, Rule 12(b)(3). ECF No. 19. Plaintiff filed a Response in Opposition and an untimely Supplement to his Response. ECF Nos. 32, 36. Defendant then filed a Motion for Leave to File a Reply and a Proposed Reply. ECF Nos. 37, 37-1.[1] In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (D.S.C.), this matter was referred to United States Magistrate Judge Paige J. Gossett for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("Report") on April 17, 2018, recommending that the Court deny Defendant's Motion to Dismiss. ECF No. 38. Defendant filed objections to the Report, and Plaintiff filed a reply. ECF Nos. 41, 42.

---

[1] The Magistrate Judge noted that the untimely memoranda "contain new information and arguments from both parties that are necessary for the disposition of Defendant's motion to dismiss." ECF No. 38 n.1. Accordingly, the Magistrate Judge considered both memoranda in her Report. *Id.*

1

## BACKGROUND

I. **Plaintiff's Complaint**

In light of the procedural posture of this case, the following allegations from Plaintiff's Complaint are taken as true for purposes of resolving Defendant's Motion to Dismiss. Plaintiff is a citizen and resident of Lithonia, Georgia. ECF No. 1 at 2. On June 7, 2016, the airbags deployed in Plaintiff's 2006 Chrysler Hemi four door vehicle. *Id.* The deployment released chemicals, which blinded Plaintiff's vision, causing him to side swipe another vehicle. *Id.* Plaintiff was transported to a hospital in Augusta, Georgia for medical treatment. *Id.* at 3.

Thereafter, on June 10, 2016, Plaintiff reported the incident to Defendant and was assigned a claims adjuster. *Id.* On June 28, 2016, a Chrysler technician inspected the vehicle in Barnwell, South Carolina. *Id.* On July 7, 2016, Plaintiff received a telephone call from A. Paul Aubin, who stated that he was an attorney representing Defendant. *Id.* Mr. Aubin told Plaintiff that Defendant would repair Plaintiff's vehicle at no expense and pay Plaintiff $50 per day until the repairs were finished.[2] *Id.* On July 26, 2016, Plaintiff received a letter from Chrysler Resolution Group concerning the repairs. *Id.*

On August 1, 2016, Plaintiff signed the form for repairs and mailed it to Mr. Aubin. *Id.* On August 16, 2016, Plaintiff spoke with Mr. Aubin on the telephone and informed him that Plaintiff was still paying the loan on his vehicle and faxed the payoff amount to Mr. Aubin. *Id.* Additionally, Plaintiff told Mr. Aubin that he had medical bills and other

---

[2] Plaintiff attached to the Complaint a copy of a letter from Mr. Aubin, which indicates that Defendant: (1) will "repair all damage resulting from the airbag deployment in [Plaintiff's] vehicle at no charge to [Plaintiff] (if parts are available)" and "will reimburse the cost of a rental vehicle up to $50.00 per day for the duration of the repairs if a loaner is not available." ECF No. 1-1 at 5.

expenses connected to his claim. *Id.* In response, Mr. Aubin told Plaintiff that Defendant would not perform the repairs on Plaintiff's vehicle until the claim for injuries is settled. *Id.*

On April 7, 2017, Plaintiff wrote Mr. Aubin a letter, stating "it is almost a year since Chrysler have hold (sic) my car hostage." ECF No. 1-1 at 6. Plaintiff further stated, "[y]ou know that I don't know nothing about the law or the legal end of this matter, but I feel like I am being tricked into doing something against my will." *Id.* at 7. Plaintiff acknowledged Defendant's offer of $8,000 to resolve his claims of pain and suffering, but noted that Defendant was "forcing" him to sign papers in order to get his car back. *Id.* Therefore, Plaintiff wrote, "[b]e advised that under Duress, Stress, and pain I will sign these papers and the considerations letter for the $8,000.00 for my hospital and taxi bills" and closed by stating that he "can only trust that Chrysler will stand behind" its promises to pay for the loss of use of his care and return his car to him within thirty days after signing the papers.[3] *Id.* On April 26, 2017, Plaintiff was "forced" to sign a release and hold harmless agreement "[f]or the amount of $8,000.00 in order to get [his] vehicle repaired and return[ed] to [him]." *Id.* at 4. That same day, by email, Plaintiff advised Mr. Aubin that he was signing the papers under duress and faxed a copy of the documents to Mr. Aubin. *Id.*

Plaintiff contends that Defendant's actions caused him a great burden. *Id.* at 4. Plaintiff, a seventy-nine-year-old man, no longer had a vehicle for his family. *Id.* He was unable to transport his handicapped wife, as Defendant "refused to give [him] a loaner until [his] car g[o]t repaired." *Id.* Additionally, Plaintiff alleges that Defendant's actions

---

[3] Mr. Aubin told Plaintiff that the towing costs were not included in the settlement, but stated Defendant "will pay the $1,700.00 to have the vehicle released" once the paperwork was executed. ECF No. 1-1 at 2.

caused him medical injuries, including stress, headaches, and pains. *Id.* Finally, Plaintiff contends that Defendant forced him into debt to purchase another vehicle, causing him to pay $760 per month on a new vehicle, in addition to the $315 per month that he was paying on his damaged vehicle that was "being held as a hostage over [his] head by [Defendant]." *Id.* Plaintiff attached a number of exhibits to his Complaint, including a copy of the letter of duress, the email letter of duress, and various correspondence between Plaintiff and Mr. Aubin. ECF No. 1-1.

Plaintiff seeks the following remedies: (1) that the release and hold harmless agreement be null and void because they were signed under duress and stress; (2) that Defendant pay $100 per day for loss of use of the vehicle, which Defendant still possesses; (3) that Defendant pay $50 per day towards transportation costs for each day the damaged vehicle was not returned to him; (4) a declaration that Defendant holding his property is a violation of his constitutional rights; and (5) that Defendant "pay back with interest all payments made toward purchasing the vehicle and pay off all balances and down payments" because Defendant still possesses the damaged vehicle.[4] *Id.* at 5. Put simply, Plaintiff claims that he seeks "Justice" because he doesn't "believe that [Defendant] can hold [his] car for 19 Months (sic) and not be accountable." *Id.*

## II. Defendant's Motion to Dismiss and Related Filings

On January 17, 2018, Defendant filed a Motion to Dismiss, raising arguments under Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6). ECF No. 19. First, Defendant argues that Plaintiff has failed to state a valid legal claim. ECF No. 19-1 at

---

[4] Plaintiff has filed a Motion for Writ of Replevin, seeking return of the vehicle. ECF No. 53.

3-5. Second, Defendant argues that venue in the District of South Carolina is improper because "Plaintiff does not allege that any of the events or omissions giving rise to the claim(s) occurred in the District of South Carolina." *Id.* at 6. On January 18, 2018, the Magistrate Judge issued a *Roseboro* Order, which was forwarded to the Plaintiff. ECF No. 22.

On February 5, 2018, Plaintiff filed a Response in Opposition to Defendant's Motion. ECF No. 32. This Response included additional information, including an allegation that the accident occurred in Barnwell, South Carolina. *Id.* at 2. Plaintiff also included additional information about the chronology of events leading up to the lawsuit and additional documentation, including an email from the Assistant Service Manager of a Chrysler Dealership in South Carolina, sent on September 26, 2017, which states Defendant "has refused to tow vehicle from our store to the customer's residence, as well to replace (sic) the ABS pump and module."[5] ECF No. 32-2 at 11.

On April 9, 2018, Plaintiff filed a Supplement to his Response in Opposition, containing additional factual and legal arguments, including details about his various claims. ECF Nos. 36, 36-1.

On April 16, 2018, Defendant filed a Motion for Leave to File Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss as well as a proposed Reply Memorandum. ECF Nos. 37, 37-1. Defendant argues: (1) that the Court should only consider documents and factual allegations contained in the four corners of the

---

[5] The email states that the cost of the ABS Pump is $479, the cost of the ABS Module is $380, labor is $369.95, and the cost to have the vehicle towed to Plaintiff's residence is $500. ECF No. 32-2 at 11.

5

Complaint; (2) Plaintiff fails to establish formation or breach of a contract; and (3) the District of South Carolina is the improper venue.[6] ECF No. 37-1.

### III. The Report and Objections

On April 17, 2018, the Magistrate Judge issued a Report recommending that Defendant's Motion to Dismiss be denied. ECF No. 38. Specifically, the Report first recommends finding that Plaintiff states a cognizable claim for revocation of the release and hold harmless agreement. *Id.* at 4-5. Second, the Report recommends finding that the District of South Carolina is the proper venue for this action. *Id.* at 6-7.

On May 1, 2018, Defendant filed objections to the Report. ECF No. 41. Defendant first argues that revocation of a contract is not a cognizable cause of action under South Carolina state law. *Id.* at 4. Second, Defendant contends that the Report improperly relied on documents extrinsic to the Complaint. *Id.* at 6-8. On May 9, 2018, Plaintiff filed a reply to Defendant's objections. ECF No. 42.

## **LEGAL STANDARD**

### I. Magistrate Review

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a de novo determination of only those portions of the Report that have been specifically objected to, and the Court may accept, reject, or modify the Report, in whole or in part. 28 U.S.C. § 636(b)(1). In the absence of specific

---

[6] Defendant's Reply was filed after the Magistrate Judge issued the Report. ECF No. 39.

objections, the Court reviews the matter only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) ("[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" (quoting Fed. R. Civ. P. 72 advisory committee's note to 1983 addition)).

II. **Motion to Dismiss for Failure to State a Claim**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses . . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (internal quotation marks and citation omitted). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, while the Court must accept the facts in a light most favorable to the nonmoving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570(2007). Although the requirement of plausibility does not impose a probability

7

requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Nevertheless, pro se pleadings are 'to be liberally construed,' and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

### III. Motion to Dismiss for Improper Venue

Motions brought under Fed. R. Civ. P. 12(b)(3) are disfavored. *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 549 (4th Cir. 2006). The Court may "freely consider evidence outside the pleadings" when ruling on a Rule 12(b)(3) motion. *Id.* at 549–50. "A plaintiff is obliged, however, to make only a prima facie showing of proper venue in order to survive a motion to dismiss." *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 366 (4th Cir. 2012) (citation omitted). In assessing whether a plaintiff has made the required showing, the Courts must view the facts in the light most favorable to the plaintiff. *Id.*

Generally, a civil action may be brought in: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the

court's personal jurisdiction with respect to such action. 28 U.S.C. § 1391(b). "[I]t is possible for venue to be proper in more than one judicial district." *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004). A case filed in an incorrect venue must be dismissed, or, if in the interests of justice, transferred to a district in which it could have been brought. 28 U.S.C. § 1406(a).

## DISCUSSION

### I. Failure to State a Claim

In its Motion to Dismiss, Defendant argues that Plaintiff failed to state a contract claim because "duress is a defense and not a claim." ECF No. 19-1 at 3. Furthermore, Defendant argues that, to the extent "the Complaint could be read to assert a claim for breach of an oral contract, the claim would fail" because Plaintiff failed to plausibly allege the required elements of a contract. *Id.* at 3–4. Finally, Defendant contends that Plaintiff's Takings Clause claim must be dismissed because Defendant "is not a state actor and Plaintiff does not allege a taking for public use." *Id.* at 5.

The Report only addresses Defendant's first two arguments. To that end, the Report first recommends finding "Plaintiff states a cognizable claim for revocation of the release and hold harmless agreement." ECF No. 38 at 4–5 (citing South Carolina state and federal cases recognizing a cause of action for revocation of a contract). Second, the Report concludes that Plaintiff's "Complaint makes no allegations about an oral contract," because "[t]he only contracts referenced in the Complaint are the release and hold harmless agreement and the vehicle repair agreement, both of which Plaintiff alleges were written agreements." *Id.* at 5. The Report then notes that "Plaintiff does not allege a breach of the release and hold harmless agreement," "[r]ather, he alleges the

9

agreement is null and void because it was signed under duress." *Id.* However, the Report concludes, "assuming without deciding that Plaintiff is even required to plead the elements of a valid contract to proceed with this case, the court finds Plaintiff provides sufficient factual allegations to plausibly claim that he was offered and accepted a contract in exchange for valuable consideration." *Id.* The Report does not address Defendant's argument about Plaintiff's Takings Clause claim.

In its objections, Defendant first argues that the Report's conclusion that South Carolina recognizes a cause of action for revocation is legal error. ECF No. 41 at 4–6. Second, Defendant contends that the Report erroneously considered allegations and evidence extrinsic to the Complaint in finding Plaintiff pled a valid claim for breach of the vehicle repair agreement. *Id.* at 7 (citing ECF No. 38 at 3). The Court first addresses Defendant's second objection as it is easily disposed of.

Defendant contends "that the only document alleged to be a contract in the Complaint is the Release and Hold Harmless Agreement, and the Complaint does not state a claim for breach of contract." ECF No. 41 at 7. A plain reading of Plaintiff's Complaint belies this assertion. In the Complaint, Plaintiff alleges that he received a letter from Mr. Aubin, dated July 26, 2016, which offered to repair Plaintiff's vehicle at no cost and provide him with $50 per day for a rental vehicle. ECF No. 1 at 3. In fact, Plaintiff attached a copy of this letter as an exhibit to the Complaint. ECF No. 1-1 at 4. The letter concludes with: "Please indicate acceptance below and sign the attached Release." *Id.* Plaintiff signed the acceptance and emailed the document to Mr. Aubin. *Id.* at 5. Thereafter, it appears communications broke down as Defendant was insisting that Plaintiff sign a release, which would foreclose any personal injury claims. *Id.* at 6–7.

Under duress, Plaintiff signed the release in consideration of Defendant's promises to fix Plaintiff's vehicle, pay Plaintiff's tow bill,[7] and pay Plaintiff $8,000. *Id.*

In light of these allegations and documentation, the Court finds that Plaintiff has pled the essential elements of a contract—offer, acceptance, and consideration. *See Sauner v. Pub. Serv. Auth. of S.C.*, 581 S.E.2d 161, 166 (S.C. 2003). Plaintiff also alleges that Defendant is still in possession of the vehicle and did not abide by the terms of the contract. ECF No. 1 at 5. This, in turn, allegedly caused Plaintiff the damages outlined in the "remedies" section of his Complaint.[8] Accordingly, the Court finds that Plaintiff has alleged a valid cause of action for breach of contract, and that the Magistrate Judge properly confined her analysis of Defendant's Motion to Dismiss to the four corners of Plaintiff's Complaint. *See Branche Builders, Inc. v. Coggins*, 686 S.E.2d 200, 202 (S.C. Ct. App. 2009) ("The elements for breach of contract are the existence of the contract, its breach, and the damages caused by such breach." (citation omitted). This objection is overruled.

As to Defendant's first objection, Defendant argues that the three cases cited by the Report[9] regarding a revocation cause of action are inapplicable to Plaintiff's Complaint. It is important first to look to the language of Plaintiff's Complaint. Plaintiff plainly alleges that he entered into a release and hold harmless agreement under duress so that he could get his vehicle fixed. ECF No. 1. By way of remedy, Plaintiff asks the

---

[7] Mr. Aubin acknowledged in an email to Plaintiff that Defendant "will pay the $1,700.00 to have the vehicle released" from the salvage yard. ECF No. 1-1 at 2.
[8] While some of the damages outlined in the Complaint may not be compensable, that is not a matter for the Court to resolve on a motion to dismiss.
[9] *Smith v. D.R. Horton, Inc.*, 742 S.E.2d 37 (S.C. Ct. App. 2013); *Simpson v. MSA of Myrtle Beach, Inc.*, 644 S.E.2d 663 (S.C. 2007); *Hyman v. Ford Motor Co.*, 142 F. Supp. 2d 735 (D.S.C. Feb. 22, 2001).

Court to find that release and hold harmless agreement to be null and void because it was signed under duress. *Id.* at 5. In light of this, the Court finds that the Report's reliance on *Hyman v. Ford Motor Co.*, 142 F. Supp. 2d 735 (D.S.C. Feb. 22, 2001), is appropriate. In *Hyman*, a former automobile dealer brought an action against a manufacturer seeking a declaration that a release that he signed in exchange for the manufacturer's repurchase of the dealer's inventory was void because, *inter alia*, the release was a product of economic duress. 142 F. Supp. 2d at 743–46. Although the court in *Hyman* found that, under the facts of the case and in light of the summary judgment standard, the release was not voidable due to duress, it clearly recognized a cause of action for seeking a declaration that a contract is voidable due to duress. *See, e.g., id.* at 746 ("[Plaintiff's] assertions of duress are substantially undermined by the fact that he was represented by counsel throughout the termination of [the case].").

Accordingly, the Court finds that Plaintiff has plausibly alleged causes of action for breach of contract and for revocation or voidance of a contract. Therefore, Defendant's Motion to Dismiss is denied in that regard.

However, the Report failed to address Plaintiff's Takings Clause claim. As Defendant correctly points out in its Motion to Dismiss, "Defendant is not a state actor and Plaintiff does not allege a taking for public use." Therefore, Plaintiff's Takings Clause claim is dismissed with prejudice. Additionally, the Report did not address the remaining "remedies" sought by Plaintiff, including various payment demands from Defendant. *See* ECF No. 1 at 5. Therefore, to the extent these remedies can be construed as additional claims (as opposed to damages for the breach of contract claim outlined above), Defendant's Motion to Dismiss is granted without prejudice. Notably, Plaintiff's Response

in Opposition and Supplement to his Response in Opposition also raise a number of factual allegations that may very well form the basis for additional causes of action. However, such allegations are extrinsic to the four corners of the Complaint. Therefore, the Court grants Plaintiff thirty days to file an amended complaint in order to cure any pleading deficiencies related to these remedies.

II. **Venue**

Defendant did not object to the Report's recommendation that the Court find that venue in the District of South Carolina is appropriate; therefore, the Court reviews this recommendation for clear error. *Diamond*, 416 F.3d at 315. The Court agrees with the Magistrate Judge "that Plaintiff's allegations that Defendant towed his vehicle to a South Carolina dealership, ordered repairs, and is still holding the vehicle there in breach of the vehicle repair agreement constitutes a substantial part of the events giving rise to his breach of contract claim such that venue is proper under [28 U.S.C.] § 1391(b)(2)." ECF No. 38 at 7 (citations omitted). Furthermore, the Magistrate Judge appropriately considered evidence outside of the four-corners of the Complaint in making this recommendation. *See Sucampo Pharms., Inc.*, 471 F.3d at 549–50 (noting that the Court may "freely consider evidence outside the pleadings" when ruling on a Rule 12(b)(3) motion). Indeed, Plaintiff's response in opposition and supplement to his response in opposition are replete with factual allegations and documentary support that the sequence of events underlying his claims occurred in the District of South Carolina.[10]

---

[10] Additionally, Plaintiff alleges that Defendant is still retaining his vehicle in the District of South Carolina, which satisfies the property subdivision of 28 U.S.C. § 1391(b)(2). *See* ECF No. 1 at 3, 5.

## **CONCLUSION**

Accordingly, the Court **ADOPTS IN PART** the Report, and Defendant's Motion to Dismiss, ECF No. 19, is **GRANTED IN PART** and **DENIED IN PART** as set out above. Furthermore, Plaintiff is given thirty days to amend his Complaint as set out above. This matter is recommitted to the Magistrate Judge for further proceedings.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

September 12, 2018
Spartanburg, South Carolina